**STATE of Tennessee, Appellee,**

v.

**William J. TAYLOR, Appellant.**

Court of Criminal Appeals of Tennessee, at Nashville.

Aug. 15, 1997.

Permission to Appeal Denied by Supreme Court March 2, 1998.

---

Michie Gibson, Jr., Nashville, TN, for Appellant.

Charles W. Burson, Attorney General and Reporter, Michael J. Fahey, II, Assistant Attorney General, 450 James Robertson Parkway Nashville, William Whitesell, District Attorney General, Paul A. Holcombe, III, Assistant District Attorney General, Thomas F. Jackson, Assistant District Attorney General, Murfreesboro, TN, for Appellee.

## OPINION

L. T. LAFFERTY, Special Judge.

The appellant, pursuant to Rule 3 of the Tennessee Rules of Appellate Procedure, has filed an appeal from his conviction by a jury in the Circuit Court of Rutherford County, TN, on February 2, 1995, for the offense of rape of a child. The appellant, referred to as the defendant, was sentenced to the Department of Correction, in cause No. 29872 for a period of twenty-two (22) years. The defendant discharged his trial counsel and hired substitute counsel for the purpose of a motion for a new trial and an appeal. The defendant, through his newly retained counsel, filed a motion for a new trial on the single ground of ineffective assistance of counsel. The defendant alleges nineteen (19) grounds as to the denial of effective assistance of counsel, pursuant to the 6th Amend-

---

1. It is the practice in this Court to refer to the victim, a child, by initials.

2. Although the defendant in his brief refers to the bedroom allegation as Count One and the December 25, 1993, allegation as Count Two, the

ment of the United States Constitution and Art. 1, § 9 of the Tennessee Constitution.

On May 15, 1995, the trial court conducted an evidentiary hearing to determine the merits of the allegations set forth in the motion for a new trial. On July 21, 1995, the trial court entered an oral order overruling the motion for a new trial. From a careful review of the trial transcript and the evidentiary hearing at the motion for a new trial, the Court finds that the defendant has established, by a preponderance of the evidence, the allegation of the denial of effective assistance of counsel. Therefore, the Court reverses and remands this cause to the Circuit Court for Rutherford County, TN, for a new trial.

## HISTORY OF CASE

In March 1994, the defendant was indicted by the Rutherford County Grand Jury in an indictment for the offense of the rape of child, to wit: BT.[1] The indictment alleges the defendant on the ___ day of November or December, 1993, did unlawfully sexually penetrate BT, a child of eleven years of age, pursuant to Tennessee Code Annotated § 39-13-522, in Rutherford County, TN.[2] Pursuant to his arrest, the defendant hired an attorney as primary trial counsel to represent him in this offense. Primary counsel hired an associate attorney to assist at trial. Primary counsel had three years of experience and had never tried a rape case. Associate counsel's practice was primarily criminal.

It was the theory of the State that the defendant committed two offenses of the rape of the child, BT. One of the alleged offenses occurred in the defendant's bedroom in his home about two weeks before Christmas December 25, 1993. The other offense occurred during a ride on Christmas day, December 25, 1993.

The defendant proceeded to trial on January 31, 1995. At the conclusion of the State's

---

record establishes there is but a single indictment, not multiple counts. Vol. 1, TT pages 35–36. The State informed the trial court that two events occurred in the month of December, 1993, contained in the time span of the indictment.

proof in chief, it developed that the trial court lacked jurisdiction to try the allegation of December 25, 1993, in that this offense occurred in Wilson County, TN. Therefore, the State made an election that the bedroom allegation be submitted to the jury for a decision. The trial court instructed the jury to disregard the Christmas allegation and only consider the allegation surrounding the bedroom event. The jury found the defendant guilty of this offense, thus leading to this appeal.

The evidence at trial established that the defendant married the victim's mother when she was sixteen (16) years old. At the time of this marriage the mother was pregnant with the victim by another man. During this marriage another child, DT, was born. The defendant and the victim's mother divorced in 1989, when she became pregnant by another man. The defendant had always treated BT as being his daughter and raised as such. The defendant paid child support and had custody privileges of both BT and his natural daughter, DT. As to the bedroom allegation, the victim testified she was at the defendant's home two (2) weekends before the December 25, 1993 incident and that the defendant's current wife had taken the other children to a grocery, leaving her alone with the defendant. The victim testified that the defendant had her come into his bedroom, where he pulled his penis out and made her perform oral sex. Afterwards, he would rub his penis between her legs. She did not know what oral sex was until the defendant told her. The victim testified some white stuff came out—it was gooey and nasty. The victim did not tell anybody about this incident.

As to the second allegation, the victim testified she and her sister were at the defendant's home on December 25, 1993. At approximately 5:00 P.M. the victim testified that the defendant had her put her coat on and go for a ride. She testified that they stopped at White's Market where she got a Mountain Dew. After leaving White's, they went down a road where the defendant made her perform oral sex. They left that area and went to another road. He cut the car's motor off and again he rubbed his penis

between her legs and tried to go up in her vagina and her bottom. Some white stuff came out and he cleaned this up with a mechanic's grease rag. Upon her return to the defendant's home, the victim did not tell the defendant's wife nor anyone about this occurrence.

On or about January 1, 1994, the victim told her mother about these allegations. The mother confronted the defendant, his wife and the defendant's mother at the victim's home, where he denied the allegations. On January 4, 1994, the victim was examined at the Kids Clinic in Nashville by nurse practitioner, Ruth Suzanne Ross. Ms. Ross conducted a genitalia examination of the victim with the aid of a colposcope. Ms. Ross testified she found trauma or damage to a portion of the victim's hymenal ring, which would be consistent with the insertion of a penis or finger. The nurse practitioner found the injury to be well-healed, and the injury could have occurred on or about the time of the bedroom allegation or on December 25, 1993.

The defendant emphatically testified that he did not commit these two allegations. Both the defendant and his wife testified that the victim was not at their home between Halloween and Christmas, 1993, so the allegation of the bedroom incident, two weeks before Christmas, 1993, never happened. As to the allegation of December 25, 1993, the defendant testified he had the victim go for a ride with him to talk about her attitude towards his present wife, Diana, and her going to basketball games without proper supervision. The defendant testified he took his rifle with him, in hope of spotting some deer and thus went to the Cedars of Lebanon Park area. The defendant believes his ex-wife applied pressure to her daughter because of his present wife and back child support. The defendant did not call any alibi witnesses nor any expert to counter the State's expert evidence.

### MOTION FOR NEW TRIAL

On May 9, 1995, the defendant filed a motion for a new trial on the single ground that the defendant was denied the effective assistance of counsel, during the pre-trial stage and at trial, based on nineteen (19)

allegations. In this appeal, the defendant raises twelve (12) issues.

(1) Defendant's rights to present a defense and to call witnesses were violated by the actions and inaction of his trial attorneys.

(2) Defendant was denied effective assistance of counsel because his trial lawyers failed to adequately confer with him, advise him and investigate the case.

(3) Defendant was denied effective assistance of counsel in that neither trial counsel ever interviewed alibi and material witnesses for the defendant that would have rebutted the State's proof concerning the crime alleged to have occurred two weeks before December 25, 1993.

(4) Defendant was denied effective assistance of counsel by the opening statement of trial counsel who told the jury that medical proof would not show anything, the victim was under some type of stress, and the crime that occurred two weeks before December 25, 1993 never happened, when in fact, his trial attorneys failed to produce any evidence to support his opening statements to the jury.

(5) Defendant was denied effective assistance of counsel by his attorney's failure to request a jury out Rule 412 hearing to show that the alleged victim had previous sexual activity that would explain medical proof offered by the State that the victim had an enlarged hymen.

(6) Defendant was denied effective assistance of counsel by his attorney's failure to properly investigate the Christmas allegation of December 25, 1993 since that allegation did not happen in Rutherford County. Counsel, therefore, allowed proof at trial of a crime that did not occur in the trial court's jurisdiction, in violation of the defendant's constitutional rights.

(7) Defendant was denied the effective assistance of Counsel by his attorney's failure to properly impeach the alleged victim during cross-examination. Defendant's attorney should have brought out during cross-examination that the alleged victim had told Detective Morton that she knew what a blow job was and would offer proof that the alleged victim had previous sexual knowledge.

(8) Defendant was denied effective assistance of counsel by his attorney's failure to object to the questioning of the defendant's wife about facts of the Christmas allegation that had been dismissed and was no longer relevant.

(9) Defendant was denied effective assistance of counsel when his attorneys ineffectively cross-examined the State's expert witness, Ruth Suzanne Ross, who was a pediatric nurse, and who testified that the victim had an enlarged hymen. Counsel was ineffective in said cross-examination by not pointing out that the alleged victim could have received these injuries years before. Counsel was ineffective in said cross-examination by not pointing out and using statements contained in published treatises to impeach said expert pursuant to Tennessee Rules of Evidence, Rule 618. (Treatises omitted).

(10) Defendant was denied effective assistance of counsel when his attorneys ineffectively cross-examined the State's expert, Ruth Suzanne Ross, by not pointing out that the alleged victim could have had consensual sexual activity and that would be the reason for her enlarged hymen.

(11) Defendant was denied effective assistance of counsel when his attorneys failed to object to the testimony of the victim's mother about what the victim told her concerning the crime in another jurisdiction. The victim's statements were not admissible as "fresh complaint" due to fact that the mother was only testifying to what the victim had told her concerning an incident that was alleged to have occurred on December 25, 1993, in Wilson County. Therefore, the victim's "fresh complaint" was not relevant to the alleged crime for which the defendant was on trial.

(12) Defendant was denied effective assistance of counsel when his attorneys failed to interview or subpoena expert witnesses who would have rebutted the State's expert witness's medical testimony as to the enlarged hymen of the victim.

As stated, the trial court conducted a sentencing hearing and an evidentiary hearing

on May 15, 1995, to determine the merits of these complaints. As to the complaint of ineffective assistance of counsel, the only witness called by the defendant was his primary trial counsel. Associate defense counsel did not testify. On July 22, 1995, the trial court entered an order overruling the motion for a new trial on the basis that overall defense counsel was effective.

## STANDARD OF APPELLATE REVIEW

Ordinarily, this Court would review this record for the purpose of determining whether the trial court's finding of facts preponderate against the judgment entered by the trial judge. This Court cannot re-weigh or re-evaluate the evidence, nor can we substitute our inferences for those drawn by the trial court. Also, the trial court makes the determination as to the credibility of the witnesses and what weight and value to be assessed. Then, the defendant has the burden in this Court to illustrate why the evidence contained in the record preponderates against the trial court's judgment. Unfortunately, the trial court did not enter a written finding of facts on many key issues. However, on July 21, 1995, the trial court did render an oral ruling on the issues raised in the motion for a new trial. It was the trial court's legal conclusion that defense counsel's strategy was within the range of competence required by attorneys. Therefore, this Court must determine if the facts in this record, in the interest of judicial economy, support the trial court's conclusion.[3] *Brooks v. State* 756 S.W.2d 288 (Tenn.Crim.App.1988); *Black v. State,* 794 S.W.2d 752 (Tenn.Crim.App.1990).

## EFFECTIVE ASSISTANCE OF COUNSEL

■ Since the defendant has claimed that his retained attorneys, rendered ineffective assistance of counsel, the burden is on the defendant to establish (1) that counsel's performance was deficient, and (2) that, but for the deficiency, there is a reasonable probability that the result would have been different.

*Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 ( 1984). The same standard applies under Art. 1, § 9 of the Tennessee Constitution. *State v. Melson,* 772 S.W.2d 417 (Tenn.1989).

In *Baxter v. Rose,* 523 S.W.2d 930 (Tenn. 1975), the Supreme Court decided that attorneys in Tennessee should be held to the general standard of whether the services rendered were within the range of competence demanded of attorneys in criminal cases. Further, the Court stated that the range of competence was to be measured by the duties and criteria set forth in *Beasley v. United States,* 491 F.2d 687 (6th Cir.1974) and *United States v. DeCoster,* 487 F.2d 1197 (D.C.Cir.1973).

In *DeCoster, supra,* the Court stated the following:

"**In General.** Counsel should be guided by the American Bar Association Standards for the Defense Function. They represent the legal profession's own articulation of guidelines for the defense of criminal cases.

**Specifically.** (1) Counsel should confer with his client without delay and as often as necessary to elicit matters of defense, or to ascertain that potential defenses are unavailable. Counsel should discuss fully potential strategies and tactical choices with his client.

(2) Counsel should promptly advise his client of his rights and take all actions necessary to preserve them ... Counsel should also be concerned with the accused's right to be released from custody pending trial, and be prepared, where appropriate, to make motions for a pre-trial psychiatric examination for the suppression of evidence.

(3) Counsel must conduct appropriate investigations, both factual and legal to determine what matters of defense can be developed. The Supreme Court has noted that the adversary system requires 'all available defenses are raises' so that the government is put to its proof. This

---

**3.** The filing of a written findings of facts by the trial judge is of immense value to a reviewing court. The trial court is the best source to determine the demeanor, credibility of witnesses, and

the nuances of the evidentiary hearing. Both the State and the defendant have a vital interest in the trial court's insight.

means in most cases a defense attorney, or his agent, should interview not only his own witnesses, but also those that the government intends to call, when they are accessible. The investigation should always include efforts to secure information in the possession of the prosecution and law enforcement authorities. And, of course, the duty to investigate also requires adequate research".

Further, in *Strickland v. Washington, supra*, 104 S.Ct. at 2066, Justice Sandra O'Conner stated:

"Thus, a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, as viewed as of the time of counsel's conduct. A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. The Court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. In making this determination, the court should keep in mind that counsel's function, as elaborated in prevailing professional norms, is to make the adversarial testing process work in the particular case. At the same time the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."

The issues presented for an appeal are somewhat overlapping, so the Court will respond to these issues in groups.

## MOTION FOR NEW TRIAL EVIDENTIARY HEARING

At the evidentiary hearing of May 15, 1995, primary defense counsel testified as to his strategy and trial tactics. As previously stated associate defense counsel did not testify.

## NON–DEFICIENT ISSUES

In **Appellate Issues 1 and 3** the defendant contends that his rights to present a defense and call witnesses were violated by the actions and inaction of defense counsel and neither defense counsel interviewed alibi and material witnesses to rebut the State's proof as to the event occurring two weekends before December 25, 1993. Defense counsel testified, as to the bedroom allegation before the 25th, that the defendant emphatically denied this accusation and that the victim, BT, was not at his home between Halloween and Christmas, 1993. Counsel's strategy was to develop from cross-examination and defense proof the victim's stressful home life and influence of the victim's mother. Defense counsel did admit that his main concentration was on the allegation of December 25, 1993, and by discrediting this proof, the effect would be the same as to the allegation occurring in the defendant's bedroom.

■ As to **Issue 3**—alibi witnesses—the defendant, at this evidentiary hearing, submitted a proffer of proof concerning certain witnesses, who might present an alibi for the time of the alleged bedroom occurrence. These are, Torry Cordell, who would testify he was at the defendant's home on the two weekends in question three-wheeling with the defendant and the victim was not at the defendant's home. Joe Graves and Larry Elders would testify they were with the defendant on the weekend before the two weekends, in Ashland City hunting. Ruby Hatfield would testify that the victim was not at the defendant's home on the two weekends in question, in that the victim was at a cousin's home that weekend, and further the victim was not at the defendant's home between Halloween and Christmas, 1993. Defense counsel admits that these names came up at trial or early in the trial. Counsel attempted to locate and talk to these persons, but was unable to do so. Further, his client, the defendant, did not mention any alibi for the event in question (bedroom). From a review of the trial transcript, it is clear, through the testimony of the defendant and his wife, that alibi was not the defense. Rather, the victim was not at his residence during the two weekends before December 25, 1993. The

Court holds that the defendant has not established any prejudice for defense counsel's failure to call alibi witnesses. *Strickland v. Washington, supra.*

■ In **Appellate Issue 4**, the defendant complains about the opening statement of defense counsel in three specific situations: (1) Medical Proof, (2) Victim stress, and (3) that the incident alleged to have occurred in the defendant's bedroom never happened. In his opening statement to the jury, as set out in Volume 1 of the trial transcript, defense counsel alerted the jury as to his theory of the case—how the defendant and the victim's mother met and subsequently married, the defendant raising the victim as if she were his own child, the birth of another daughter, the defendant's divorce and the stress on the victim torn between two families. These statements of defense counsel were fully supported by the testimony of the victim, victim's mother, defendant, defendant's wife and defendant's mother. As to the statement of nothing happened in the bedroom allegation, the defendant flatly denied this occurrence in his testimony. The Court holds that defense counsel's opening statement in these areas was supported by the evidence at trial, but resolved against the defendant. There is no merit to this allegation of ineffective assistance of counsel, in regards to the opening statement as to victim stress and the bedroom allegation.

■ In **Appellate Issue 5**, the defendant strongly contends that defense counsel was deficient in failing to request a Rule 412 hearing to establish the victim had previous sexual activity. Defense counsel testified that he did not believe that Tennessee Rules of Evidence, Rule 412 was applicable to the charge of rape of a child, since this charge was not set out in the rule's preamble. This rule applies to the applicability and procedures on the relevance of the victim's sexual behavior. At the evidentiary hearing, the defendant submitted a proffer of proof that one, Aaron Hatfield, would testify that the victim had tried to have sexual relations with him, prior to December 25, 1993. Tammy Johnson, the victim's cousin, would testify that the victim told her that she (victim) had been having sex for quite some time before December 25, 1993. Certainly, such evidence may be relevant and call for a Rule 412 hearing if it were known by defense counsel. However, this record establishes that defense counsel was not, prior to trial, aware of such potential evidence. Since the case has been remanded for a new trial, the trial court will be in the position to determine the relevance of such proposed evidence.

■ In **Appellate Issue 7**, the defendant complains that defense counsel failed to properly impeach the alleged victim during cross-examination, more specifically, about the victim's knowledge of the term "blow job". The evidentiary hearing establishes that defense counsel did not talk to the victim prior to trial and her testimony at trial was his first opportunity to hear her account. Defense counsel admitted that he did have a copy of Detective Morton's file which contained the victim's statements. Defense counsel agreed he did not cross-examine the victim about her knowledge of the term "blow job", nor about her description of oral sex. Defense counsel chose not to impeach the victim in this area to avoid the appearance of badgering the victim. This was a judgment call on defense counsel's part and the Court cannot say that such decision was prejudicial nor deficient. However, a re-trial will provide the opportunity for such questions, if appropriate.

■ As to the broad complaint of improper impeachment of the victim, defense counsel did, at trial, attempt to impeach the victim by showing her two photos in a jury out hearing. These photos were of sexual content. It was the State's position that these photos were not admissible due to the fact that defense counsel failed to comply with Rule 412. It is here that defense counsel did not believe Rule 412 was applicable to the charge of rape of a child. Defense counsel contended that these photos were found in the victim's purse in August, 1993, by the defendant's wife Diane Taylor. Defense counsel insisted that these photos were relevant to show undue influence on the victim in her home and her knowledge of sexual terms and acts. The trial court sustained the State's objection as to the admissibility of

these photos (Exhibits 5 c and d ID).[4] This action on the part of defense counsel was not prejudicial nor deficient in his representation of the defendant.

In **Appellate Issue 8**, the defendant complains that defense counsel failed to object to the questioning of his wife (by the State) about the allegation of December 25, 1993, in the indictment that had been dismissed and no longer relevant. The record of the evidentiary hearing does not support this allegation. At this hearing, defense counsel was asked why he failed to object to the State's argumentative questioning to the defendant's wife. There is no merit to this allegation.

In **Appellate Issue 9**, the defendant contends that defense counsel ineffectively cross-examined the nurse practitioner, Ruth Suzanne Ross, and failed to utilize treatises to impeach said expert pursuant to Tennessee Rules of Evidence, Rule 618. At the evidentiary hearing, defense counsel testified that he read some treatises, but did not use this information in questioning Ms. Ross. He believed there was no need to do so, since the medical report showed the wound to be healed. The failure to utilize treatises in cross-examination does not establish ineffective assistance of counsel. There is no merit to this issue.

In **Appellate Issue 10**, the defendant enlarges on his complaint that defense counsel ineffectively cross-examined the State's expert witness, Ruth Suzanne Ross, by not pointing out that the victim could have had consensual sexual activity to account for the enlarged hymen. In the evidentiary hearing, defense counsel testified he did not cross-examine Ms. Ross about the possibility of consensual sex on the part of the victim causing an enlarged hymen. The record supports the defense counsel's testimony that he questioned Ms Ross about the possibility of Tampax usage accounting for an enlarged hymen. Defense counsel cannot be faulted for not exploring prior sexual activity on the victim's part in absence of such information

furnished to him. (See **Appellate Issue 5** ). There is no merit to this allegation.

In **Appellate Issue 11**, the defendant contends defense counsel failed to object to the testimony of the victim's mother about what the victim had told her concerning a crime in another jurisdiction. This testimony concerned the allegation of December 25, 1993, occurring in another county. A review of Volume II of the trial transcript establishes at page 221, associate defense counsel objected to the mother's testimony relating what her daughter told her about the allegation of December 25, 1993. The defendant contends that such testimony was not relevant to the alleged crime for which the defendant was on trial. The defendant overlooks that this is not a multi-count indictment, but the State alleges two offenses within the time frame of the indictment. Also, the mother's testimony came before the State made an election as to what offense the jury would consider. The trial court properly ruled such testimony as "fresh complaint" in February, 1995. However, the question of "fresh complaint" made by a child has been resolved by *State v. Livingston*, 907 S.W.2d 392 (Tenn. Sept.1995); *State v. Speck*, 944 S.W.2d 598 (Tenn.1997). There is no merit to this allegation of ineffective assistance of counsel.

In **Appellate Issue 12**, the defendant would argue that defense counsel was ineffective in failing to interview or subpoena expert witnesses who would rebut the State's expert witness on the question of the enlarged hymen. As to this allegation, defense counsel testified he did not interview or talk to any experts, but read some articles and talked to some friends. Also, defense counsel testified that the defendant had provided him the name of a Dr. Singh, a family doctor, who was prepared to testify that Tampax usage could cause hymenal injuries. Defense counsel did not talk to or subpoena this witness. The defendant did not call Dr. Singh or offer a proffer of proof as to Dr. Singh's testimony concerning this subject matter at the evidentiary hearing. Judge

---

4. Although the trial court sustained the State's objection to the introduction of Exhibits 5 c and d, we note that the trial court commented that these photos may be admissible or not depending on sufficient proof. These photos do have significant relevance for impeachment purposes, and may be admissible, if properly authenticated.

Joe Jones, speaking for this Court in *Black v. State, supra,* at page 757 stated:

> "It is elementary that neither a trial judge nor an appellate court can speculate or guess on the question of whether further investigation would have revealed a material witness or what a witness's testimony might have been if introduced by defense counsel. The same is true regarding the failure to call a known witness. In short, if a petitioner is able to establish that defense counsel was deficient in the investigation of the facts or calling a known witness, the petitioner is not entitled to relief from his conviction on this ground unless he can produce a material witness who (a) could have been found by a reasonable investigation and (b) would testify favorably in support of his defense if called. Otherwise, the petitioner fails to establish the prejudice requirement mandated by *Strickland v. Washington.*"

Therefore, the defendant, since the expert Dr. Singh was not called, has failed to establish prejudice necessary for relief.

### DEFICIENT ISSUES

From a review of the evidentiary hearing and the trial transcript, the Court finds that the defendant has established that defense counsel was deficient in his representation of the defendant at trial in **Appellate Issues 6 and 4**, thus requiring a remand for a new trial.

■ In **Appellate Issue 6**, the defendant alleges that his trial counsel (both?) failed to properly investigate the facts surrounding the allegation of the rape of a child on December 25, 1993, occurring in Rutherford County. Thus, defense counsel permitted proof of a crime at trial that did not occur in Rutherford County. Of all the allegations of ineffective assistance of counsel and the proof in this record, this claim is the most

troublesome to the Court. From a careful review of the trial transcript and evidentiary hearing, both the State and the defense were on notice of a jurisdictional problem.[5]

In Volume III of the trial transcript, Detective Preble Morton, investigative officer, testified that the allegation of the rape of a child (BT) on December 25, 1993 occurred in Wilson County. Detective Morton determined this fact, after talking to the victim, and following the route taken by the defendant. Detective Morton, also, testified that the bedroom allegation, two weeks before December 25, occurred in Rutherford County. At the evidentiary hearing, defense counsel testified he had a copy of Detective Morton's investigative report. At the close of the State's proof in chief, defense counsel moved for a judgment of acquittal as to the allegation of December 25, 1993, in that this offense occurred in Wilson County. The State conceded, based on the testimony of Detective Morton, that the offense of December 25, 1993, occurred in Wilson County. The State then moved to make an election that the offense alleged to have occurred in defendant's bedroom be submitted to the jury. The Court granted the election and instructed the jury not to consider the Christmas allegation.

At the evidentiary hearing, beginning at page 43 of the transcript, defense counsel was asked the following questions concerning the offense of December 25, 1993:

"Q. Where did the December 25th incident occur?

A. It occurred, apparently, in Wilson County.

Q. You say apparently?

A. Apparently, that's what the proof showed.

5. The State may very well have contributed significantly to the jurisdictional problem. There are several references in the trial record that the State was on notice that this allegation of December 25, 1993, occurred in Wilson County. The State's opening statement in Vol. 1, TT, at page 114 indicates the Christmas allegation took place in Wilson County. In Vol. 3, TT, at pages 304 and 305, the State's election of offenses, they concede the Christmas allegation occurred in Wilson County. Even the trial court had a question in its mind. Finally, the State was on notice that the investigative officer's, (Preble Morton), file clearly showed this allegation happened in Wilson County. Since the allegation occurred in another county, its admissibility would be error in the trial in Rutherford county.

Q. What investigation did you do before the trial to determine where the crime allegedly —?

A. Well, I didn't physically go out and look at the place, but I did look at maps. It appeared that the allegation took place in Wilson County. I asked the Assistant District General about it, and the Assistant District Attorney General told me they intended to prove up that the crime started in Rutherford County and then carried across county lines in Wilson County. *So that was about as far as I took it.* (Emphasis added).

"Q. Did you ever drive the route depicted in Detective Morton's—

A. No, I did not, but I looked at maps.

Q. And you thought it happened in Wilson County?

A. Yeah.

Q. Did you file any motions before trial to have that count (sic) dismissed or not brought up in trial?

A. Well, based upon the representation of the District Attorney, I did not because, quite frankly, if they couldn't prove it, I felt I could get the thing dismissed.

Q. Do you believe it was better for the jury to hear about a crime that didn't happen in this county?

A. Well, there's no doubt in my mind that all that testimony inflamed the jury. There's no doubt in my mind that was the heart of the case. And there's no doubt in my mind that the jury really reacted to these allegations on December 25th. They reacted visibly. And there's no question in my mind that those allegations were the real heart of the conviction, no question. But if a defendant's attorney could object every time by filing a motion about charges being brought, every case would have an objection to the charge.

Q. I'm not talking about being brought; I'm talking about being brought in the right venue, the right jurisdiction.

A. Again, if they said they felt they could prove it up, I felt the burden would be on them.

Q. So you're telling the Court that you accepted your adversary's version rather than doing independent investigation and research?

A. Well, essentially, if they felt they could prove it up, why not let them try? We did get that one dismissed because they didn't prove it."

The State's cross-examination concerning this issue was not helpful. As stated previously, it is clear that defense counsel was aware of the possibility of a venue problem. Therefore, it was incumbent on defense counsel's part to conduct an adequate investigation to determine exactly where the allegations occurred, e.g. bill of particulars, etc. *Baxter v. Rose, supra.* It is clear that had a proper pre-trial investigation been accomplished and determined that the December 25th allegation occurred in Wilson County, a Rutherford County jury would not have heard this allegation. In *Baxter v. Rose, supra,* the Supreme Court adopted language from *United States v. DeCoster, supra,* on the duties of defense counsel, more specifically, No. 3, as to the necessity of a proper pre-trial investigation. As defense counsel stated in his testimony, such evidence was devastating. The Court holds that defense counsel was deficient in his pre-trial investigation. Was defense counsel's deficiency so prejudicial requiring reversal?

In evaluating whether a defendant has discharged the burden of establishing prejudice, a court

"must consider the totality of the evidence before the judge or jury. Some of the factual findings will have been unaffected by the errors, and factual findings that were affected will have been affected in different ways. Some errors will have had a pervasive effect on the inferences to be drawn from the evidence, altering the entire evidentiary picture, and some will have an isolated, trivial effect. Moreover, a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support. Taking the unaffected findings as a given, and taking due account of the effect of the errors on the remaining findings, a court making the

prejudice inquiry must ask if the defendant has met the burden of showing that the decision reached would reasonably likely have been different absent the errors." *Strickland v. Washington, supra,* 104 S.Ct. at 2069; *Goad v. State,* 938 S.W.2d 363 (Tenn.1996).

The allegations of a rape of a child are the most difficult cases to confront a trial judge, the State and especially defense counsel. This is especially true in a single indictment with several alleged offenses. Defense counsel's theory to concentrate on one episode, such as the December 25th allegation, and discredit the other event is good strategy. This Court is convinced that had defense counsel properly investigated the facts, pretrial, then the Wilson County allegation would not have been before a Rutherford County jury. Defense counsel's error compounded the problem by letting the Rutherford County jury hear testimony of one relevant event and an irrelevant event of a sexual act between the victim and the defendant. Coupled with testimony of hymenal damage, it would be difficult for defense counsel to overcome such evidence. Therefore, the Court holds that the record preponderates against the trial court's finding that the defendant was afforded his constitutional right to effective assistance of counsel in the trial of this case.

■ As stated in **Appellate Issue 4**, the defendant alleges he was denied the effective assistance of counsel in that defense counsel, in his opening statement to the jury, told them that the medical proof would not show anything and failed to support this statement with any evidence. Defense counsel's opening statement consisted of fifteen (15) pages. In regards to the complaint, defense counsel stated to the jury, "By the way, I don't believe the medical evidence is going to show anything." Vol. 1, page 132, Trial Transcript. At the evidentiary hearing, defense counsel testified in response to the State's questions at page 64:

"Q. Now, in your opening statement you alluded to at least three things, although more than that. Did you ever use the word promise as defense counsel has suggested? Did you promise the jurors or Court or anyone else that you could do a certain thing?

A. I did not use the word promise. However, when you say something to a jury, that generally is deemed to be a promise if you put it like you're going to be able to prove it.

Q. Well, it was your intention; was it not?

A. It was my intention at the opening statement. I had, I felt, a good opening statement. I felt at the end of the opening statement the jury had an open mind at the end of the opening statement.

Q. Now, in regard to the suggestion about the medical proof, you have maintained and continue to maintain that the medical proof itself did not in any way directly link William Taylor with this incident?

A. I vehemently believe that, and I also vehemently believe that medical proof—I objected to it coming in. I still don't think it had anything to do, even circumstantially, with him.

Q. And having heard the proof through Dr. Ross, has that changed at all? Did she suggest in any way that we could show that Billy Taylor did this based on this medical evidence?

A. No, I don't think she did.

Q. So when you made that statement to the jury in your opening remarks, that's what you intended and you followed through on that.

A. That's essentially what I intended to say. I did that opening statement pretty much from memory, but what I intended to say there would be no direct link between the medical evidence and Mr. Taylor."

Also, defense counsel testified that he inquired of the nurse practitioner, Ruth Suzanne Ross, of any direct evidence linked to the defendant and "she said she didn't." However, in reviewing Volume II of the trial transcript, defense counsel did not ask any specific questions of the nurse practitioner about any evidence directly attributable to the defendant. The total cross-examination of the nurse practitioner consisted of questions surrounding the possibility of hymenal injuries being caused by Tampax. Unfortu-

nately, the statement, "By the way I don't believe the medical evidence is going to show anything." is incorrect. At trial, Ms. Ross testified that the victim had a hymenal injury that would be consistent with penetration by a penis or finger. The injury was well healed, but penetration could have occurred two weeks before December 25, 1993. The victim's examination occurred on January 6, 1994. Aware, of this damaging State proof, defense counsel was on notice to explore any and every reasonable explanation for this injury.

The defendant would argue that this statement of defense counsel constitutes a promise. The Court would characterize this statement as more an overstatement or misstatement of the potential proof. Most cases alleging error in opening statements involve the failure of defense attorneys to call witnesses in support of their opening comments. In *State v. Zimmerman*, 823 S.W.2d 220 (Tenn.Crim.App.1991), Judge Wade, speaking for this Court, stated at page 225:

> "Opening statements are relatively new to the criminal law in this state. As late as 1963, in the case of *Carroll v. State*, 212 Tenn. 464, 370 S.W.2d 523, our Supreme Court held that there could be no opening statement in a criminal case. In the same year, the legislature enacted a statute permitting opening statements in both civil and criminal trials. Tenn Code Ann. 20–9–301. *Either overstatement or misstatement during this presentation, despite curative efforts, may have adverse effects:* (Emphasis added.) *McCloskey, Criminal Law Desk Book*, Sec 1506(3)(0) (Matthew Bender, 1990).

In *State v. Moorman*, 320 N.C. 387, 358 S.E.2d 502 (1987), the North Carolina Supreme Court found ineffective assistance of counsel based upon the failure to present evidence promised during the opening statement:

> "A cardinal tenant of successful advocacy is that the advocate be unquestionably credible. If the fact finder loses confidence in the credibility of the advocate, it loses confidence in the credibility of the advocate's cause."

In his closing argument, defense counsel maintained the State's own doctor's report indicated nothing here to say that the defendant did anything. However, the medical report of Ruth Suzanne Ross, Exhibit 7 ID, establishes in several areas that the victim maintained her step-father, the defendant, sexually penetrated her and made her perform oral sex. Coupled with the finding by the nurse practitioner of hymenal injury, defense counsel would be in a difficult position to claim there is no medical evidence to connect the defendant with these allegations.

## CONCLUSION

This Court agrees with a number of the trial court's rulings on July 21, 1995. However, we believe the cumulative effect of Appellate Issues 4 and 6 errors deprived the defense of a meaningful defense. The reliability of the verdict is in question. We have determined that the entire record preponderates against the trial court's findings that the defendant, William Taylor, was afforded his constitutional right to effective assistance of counsel at trial. Accordingly, the judgment of the trial court is reversed and this cause is remanded for a new trial.

WADE and SUMMERS, JJ., concur.